**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

| | |
|---|---|
| IN RE: | : |
| | : |
| ROBERT MASON BEAUCHAMP, | : |
| | : |
| *Debtor*, | : |

_____

| | | |
|---|---|---|
| MOSSY DELL, INC., | : | |
| | : | |
| Appellant, | : | |
| | : | BANKRUPTCY APPEAL |
| v. | : | 1:13-CV-14 (WLS) |
| | : | |
| | : | |
| AB&T NATIONAL BANK, | : | |
| | : | |
| Appellee. | : | |
| _____ | : | |

## ORDER

Presently pending before the Court is Appellant Mossy Dell Inc.'s ("Mossy Dell") appeal of the United States Bankruptcy Court for the Middle District of Georgia's November 28, 2012 Memorandum Opinion holding that a transfer restriction on Mossy Dell's stock was invalid and unenforceable under Georgia law. (*See* Doc. 1.) For the reasons discussed below, the Court concludes that the Bankruptcy Court's Memorandum Opinion is **AFFIRMED-IN-PART AND REVERSED-IN-PART.**

## BACKGROUND

On December 28, 1972, Robert B. Lee and Flora S. Lee incorporated Flo-Rob, Inc. ("Flo-Rob") under the laws of Georgia. (Doc. 1 at 50.) Robert and Flora Lee had two children, Barbara and Adelaide. (*Id.* at 107.) Barbara and Adelaide have since married and are now members of the Beauchamp and Leach families, respectively. (*Id.*) Flo-

Rob was engaged in real estate, farming, and buying and selling securities.  (*Id.* at 50.)
For a period of time, the Beauchamps and Leaches shared in the operation of Flo-Rob.
(*Id.* at 107.)  No restrictions were placed on the ownership or transfer of Flo-Rob stock
until 1996.  (*Id.*)  At that time, the board of directors amended the bylaws to require
shareholders to give the corporation the right of first refusal before selling stock.  (*Id.* at
108.)

In 2009, after tensions developed between the Beauchamps and Leaches in
relation to the operation of Flo-Rob, the families decided to split the assets into two
corporations.  (*Id.* at 97.)  The Leaches kept their stock in Flo-Rob, and Mossy Dell was
formed to receive the Beauchamps' share of assets.  (*Id.* at 108.)  When Mossy Dell was
incorporated on July 14, 2009, its articles of incorporation provided that its shares
could only be transferred to lineal descendants of Robert and Flora Lee, and the shares
could not be transferred at all for ten years.[1]  (*Id.* at 73.)  Contemporaneously with the
incorporation of Mossy Dell, Flo-Rob amended its bylaws to provide for the same
restriction.  (*Id.* at 108.)

As a result of the asset transfer, Robert Beauchamp ("Debtor"), the debtor in the
above-captioned matter, received 4,000 shares of Mossy Dell.  (*Id.* at 95-96.)  On June
12, 2009, shortly before Mossy Dell's incorporation and the placement of the transfer
restriction on the shares, AB&T National Bank ("AB&T National") obtained a judgment
against Debtor in the Tenth Judicial Circuit Court in and for Jefferson County, Alabama,
in the amount of $1,293,671.49.  (*Id.* at 71.)  On September 21, 2009, the judgment was
domesticated by Order of the Superior Court of Dougherty County, Georgia.  (Doc. 1-3 at

---

[1] The restriction reads, in pertinent part, as follows:  "The shares of the corporation may only be
transferred to lineal descendants of Flora S. Lee and her husband, Robert Lee ... The distributees (electing
shareholders of Flo-Rob, Inc.) receiving Mossy Dell, Inc. shares may not transfer those shares for a period
of ten years from August 1, 2009."  (Doc. at 73.)

7.)  Debtor's 4,000 shares of Mossy Dell stock were seized and sold at a public sale to AB&T National on October 13, 2009.  (Doc. 1 at 109.)  AB&T National demanded that Mossy Dell issue a new stock certificate showing it as the owner.  (Doc. 1-3 at 5.)  Mossy Dell refused and the dispute giving rise to the instant matter followed.  (*Id.*)

On November 3, 2010, AB&T National filed suit in Superior Court in Lee County, Georgia, seeking to compel Mossy Dell to surrender the stock certificate owned by Debtor and issue a new stock certificate reflecting AB&T National as the owner.  (Doc. 1-2 at 3.)  In its complaint, AB&T National alleged that the purpose of the transfer restriction was "to defraud creditors in general and [AB&T National] in particular." (Doc. 1-3 at 4.)  Mossy Dell denied that allegation, and the other shareholders of Mossy Dell denied knowledge of Debtor's financial condition or the judgment against him at the time of Mossy Dell's incorporation.  (*See* Doc. 1 at 132-33.)  Instead, Mossy Dell claimed that the purpose of the transfer restriction was to ensure that the ownership of the company remained with the families of Robert and Flora Lee, and was consistent with a "long standing family tradition."  (Doc. 1-3 at 27.)

On May 19, 2011, AB&T National filed its Motion for Summary Judgment and brief in support thereof in Lee County Superior Court.  (Doc. 1 at 105.)  In its Motion for Summary Judgment, AB&T National argued that the circumstances surrounding the placement of the restriction on the stock indicated fraud.  (*Id.* at 112.)  Mossy Dell responded and argued that no fraud was involved since the family had no knowledge of Debtor's financial situation.  (*Id.* at 128 ¶ 26.)  Following Mossy Dell's response to its Motion for Summary Judgment, AB&T National filed Supplemental Brief in Support of its Motion for Summary Judgment.  (*Id.* at 115.)  Therein, AB&T National argued that the restriction was manifestly unreasonable and therefore unenforceable under Ga.

Code § 14-2-627(d)(4).  (*Id.* at 117.)  In support of this theory, AB&T National urged that "[i]t cannot seriously be argued that a situation such as the one in the case at bar, which converts freely alienable shares of stock that are subject to seizure by a creditor into shares of stock that are not subject to seizure by a creditor which is accomplished after a judgment is entered against the stockholder is not manifestly unreasonable and arguably a violation of the Uniform Fraudulent Transfers Act." (*Id.* at 117.)

On January 20, 2012, Debtor filed a voluntary petition for bankruptcy under Chapter 7 of the United States Bankruptcy Code.  (*Id.* at 1.)  On February 28, 2012, Debtor filed a Notice of Removal in the United States Bankruptcy Court for the Middle District of Georgia.  (*Id.*)  The Chapter 7 Trustee filed a Motion to Intervene on June 6, 2012, which was granted by the Bankruptcy Court on July 9, 2012.  (*Id.* at 6, 13.)  On September 24, 2012, AB&T National filed a Motion for Summary Judgment in the Bankruptcy Court, but requested the Court to review all documents and motions submitted in Lee County Superior Court.  (*Id.* at 36.)  Appellant responded on October 19, 2012, and requested the Court to do the same.  (*Id.* at 120.)

On November 28, 2012, United States Bankruptcy Judge James D. Walker, Jr. issued a Memorandum Opinion granting summary judgment in favor of AB&T National. (*Id.* at 154.)  The Bankruptcy Court held that the restriction prohibiting any transfer of stock for ten years ("ten-year restriction") and the restriction prohibiting transfer to non-family members ("non-family restriction") were unenforceable.  (*Id.* at 165.)  The Bankruptcy Court noted that transfer restrictions are valid under Georgia law if (1) adopted for a reasonable purpose, and (2) it fits within one of the four categories set forth in Ga. Code § 14-2-627(d).  (*Id.* at 162.)  The Court held the restrictions invalid because they did not fit within a Ga. Code § 14-2-627(d) category.  (*Id.* at 165.)

4

As to the non-family restriction, the Court found that the only category that was potentially applicable was Ga. Code § 14-2-627(d)(4).  (*See id.*)  That section permits a restriction that prohibits transfer of shares to "designated persons or classes of persons, if the prohibition is not manifestly unreasonable."  (*Id.*)  The Court held that the restriction was invalid because it did not "exclude 'designated persons or a class of persons' ... it does the inverse.  It excludes the world, while allowing transfers to a very limited class."  The Court also held that the non-family restriction was manifestly unreasonable and further explained that the

> "restriction might be reasonable if it provided some alternative means for a shareholder to realize the value of his stock ... [I]f debtor's family were unwilling or unable to purchase his shares, the restriction would serve as an absolute prohibition on transfer.  Absolute restrictions on transfer are 'unreasonable and contravene public policy.'  Because Debtor's ability to realize the value of his shares is solely dependent on the whims of his family, the Court concludes that the Mossy Dell restriction on transfers to nonfamily members is manifestly unreasonable."

(*Id.* at 166-67.)

As a result of its findings, the Bankruptcy Court ordered Mossy Dell to issue the disputed shares of stock to AB&T National.  (*Id.* at 169.)  This appeal followed.

## DISCUSSION

### I.  Standard of Review

A district court has jurisdiction to hear appeals from final judgments, orders, and decrees.  28 U.S.C. § 158(a)(1).  In a bankruptcy appeal, the district court reviews the bankruptcy court's determinations of law *de novo*.  *Goerg v. Parungao*, 930 F.2d 1563, 1566 (11th Cir. 1991).  The district court applies the "clearly erroneous" standard of review to the bankruptcy court's factual findings.  *Id.*  A factual finding is not clearly erroneous unless "this court, after reviewing all of the evidence, [is] left with the definite

and firm conviction that a mistake has been committed." *In re Farris*, 365 F. App'x 198, 199 (11th Cir. 2010) (citation omitted).

## II. Analysis

Georgia and 28 other states[2] have adopted Model Business Corporation Act ("MBCA") § 6.27 without substantive change. *Compare* MODEL BUSINESS CORP. ACT § 6.27 *with* GA. CODE ANN. § 14-2-627. Georgia's statute provides that transfer restrictions on stock that are included in the corporation's articles of incorporation are "valid and enforceable against the holder or a transferee of the holder if the restriction is authorized by this Code section and its existence is noted conspicuously on the front or back of the certificate [or the holder or transferee has] knowledge of the restriction." GA. CODE ANN. § 14-2-627(b). The parties do not dispute that Mossy Dell's articles of incorporation included the transfer restrictions, and that the stock conspicuously displayed notice of the transfer restrictions.

To be authorized, a transfer restriction must further a reasonable purpose and achieve that purpose by use of a proper mechanism. *See* GA. CODE ANN. § 14-2-627(c) & (d); *see also Salt Lake Tribune Pub. Co., LLC v. AT&T Corp.*, 320 F.3d 1081, 1092 (10th Cir. 2003) (interpreting similar statute enacted by Utah Legislature). The Official Comment to MBCA § 6.27 makes clear that subsection (c) is intended to comprise a list of examples of reasonable purposes, such as "to maintain the corporation's status when it is dependent on the number or identity of its shareholders," but that list is non-exhaustive. *See* GA. CODE ANN. § 14-2-627(c)(3). The Bankruptcy Court explained that, if proven to be genuine, the purpose for the transfer restriction would be reasonable.

[2] Alabama, Arizona, Arkansas, Colorado, Connecticut, Florida, Hawaii, Idaho, Indiana, Iowa, Kentucky, Maine, Massachusetts, Mississippi, Montana, Nebraska, New Hampshire, North Carolina, Oregon, Rhode Island, South Carolina, Tennessee, Utah, Vermont, Virginia, Washington, West Virginia, and Wyoming.

(Doc. 1 at 165.)   However, the Court found that it was unnecessary to make such a factual finding because the restrictions failed under subsection (d).   (*Id.* at 165-66.)

Appellant raises four issues in its brief.   First, Appellant argues that the provisions of Ga. Code § 14-2-627(d) are permissive, and therefore do not constitute an exclusive list of permissible transfer restrictions.   (Doc. 3 at 2-3.)   Second, Appellant contends that the non-family restriction is not manifestly unreasonable.   (*Id.* at 5.)   Third, Appellant maintains that the transfer restrictions otherwise meet the statutory criteria of Ga. Code § 14-2-627(a) & (b).   (*Id.* at 2.)   Fourth, Appellant argues that the restrictions serve a "reasonable purpose."   (*Id.*)   Due to the narrow nature of the Bankruptcy Court's holding, this Court need only address Appellant's first and second issues.

### A.  Nature of Ga. Code § 14-2-627(d)

In its brief, Appellant asks whether the list of mechanisms set forth by Ga. Code § 14-2-627(d) constitutes the exclusive means by which a transfer restriction may achieve its purpose.  (Doc. 3 at 2.)  Although the Official Comment and Georgia case law do not explicitly answer this question, the Court now holds that the list provided by Ga. Code § 14-2-627(d) is a complete list of the acceptable mechanisms that may be utilized by a transfer restriction.

Georgia courts "look to the literal language of the statute[], the rules of statutory construction and rules of reason and logic, the most important of which is to construe the statute[] so as to give effect to the legislature's intent."   *See*, *e.g.*, *Moore v. Moore-McKinney*, 678 S.E.2d 152, 155 (Ga. 2009); *Oni v. Oni*, No. A13A0368, 2013 WL 3498514, at *3 (Ga. Ct. App. July 15, 2013); *Collins v. Davis*, 733 S.E.2d 798, 800 (Ga. Ct. App. 2012).  Courts should "give words their plain and ordinary meaning, and []

avoid a construction that makes some language mere surplusage." *Ga. Transmission Corp. v. Worley*, 720 S.E.2d 305, 307 (Ga. Ct. App. 2011).

The Official Comment to MBCA § 6.27 notes that "Section 6.27(c) [Ga. Code § 14-2-627(c)] describes the purposes for which restrictions may be imposed while section 6.27(d) [Ga. Code § 14-2-627(d)] describes the types of restrictions that may be imposed." Subsection (c) lists two examples of purposes, and provides that "any other reasonable purpose" will suffice. Thus, subsection (c) provides a catch-all, allowing courts to deem various purposes reasonable as those courts deem fit. Subsection (d) does not contain such a catch-all provision. If the Georgia Legislature intended for transfer restrictions to use mechanisms not contemplated by subsection (d), it would have included the same catch-all language used by subsection (c).

Subsection (d) states that a "restriction on the transfer or registration of transfer of shares *may*" do various things. GA. CODE ANN. § 14-2-627(d). Appellant argues that the word "may" is permissive, and gives a list of *suggestions* for mechanisms that parties may utilize. (Doc. 3 at 3.) Therefore, Appellant argues, the mechanisms listed "are, by plain meaning, not mandatory." (*Id.*) Of course, no person is required to draft a transfer provision to do anything or draft such a provision at all. In that sense, subsection (d) is not mandatory.

Since Georgia law emphasizes the plain meaning of words, the Court should first look to the typical interpretation of the word, as well as the dictionary definition of the word. *See*, *e.g.*, *Ga. Transmission Corp.*, 720 S.E.2d at 307. The word "may" typically indicates "discretion or a choice between two or more alternatives." *United States v. Cook*, 432 F.2d 1093, 1098 (7th Cir. 1970). The Merriam-Webster Dictionary provides various definitions of "may." One definition states that "may" means "shall, must ...

where the sense, purpose, or policy requires this interpretation." However, another definition indicates that "may" means "have permission to." For the reasons stated below, "may" should be interpreted in this context to refer to "discretion or a choice between two or more alternatives." *See Cook*, 432 F.2d at 1098.

Also, it should be noted that the list of cases provided by the Official Comment only highlight examples of the use of mechanisms enumerated by subsection (d). *See*, *e.g.*, *Goldberg v. United Postal Serv. of Am., Inc.*, 605 F. Supp. 508 (E.D.N.Y. 1985) (right to first refusal); *Hodges v. Pittman*, 384 So. 2d 14 (Ala. 1980) (buy-sell agreement); *In re Estate of Hatfield*, 403 N.Y.S.2d 172 (Sup. Ct. 1978) (right of first refusal with exception for legatees in will). Furthermore, subsection (d) includes restrictions that are not absolute restrictions on alienation, which are against public policy under Georgia law. *See*, *e.g.*, *Wills v. Pierce*, 67 S.E.2d 239, 241 (Ga. 1951). For instance, subsection (d) permits rights of first refusal, buy-sell agreements, provisions for approval before stock transfers, and prohibitions against transfers to designated persons or classes of persons. *See* GA. CODE ANN. § 14-2-627(d). The latter two mechanisms, which would prohibit transfer in certain situations altogether, require that the resulting effect not be manifestly unreasonable. *See id.* § 14-2-627(d)(3) & (4). These mechanisms are consistent with the stated goal of the drafters of MBCA § 6.27, which was to strike a balance between the public policy against absolute restraints on alienation and the ability of corporations to contract. Therefore, the Court holds that subsection (d) lists the permissible mechanisms that may be used by a transfer restriction, and all mechanisms not listed are impermissible.

**B. Mossy Dell's Stock Transfer Restrictions**

Appellant's restrictions may be enforced under Georgia law, assuming all other statutory requirements are met, if they use a mechanism deemed permissible by the statute. Among the permitted mechanisms are those that "[p]rohibit the transfer ... to designated persons or classes of persons, if the prohibition is not manifestly unreasonable." GA. CODE ANN. § 14-2-627(d)(4).

### i.     Ten-Year Transfer Restriction

The Bankruptcy Court held that the ten year provision was unenforceable under Georgia law because it did not utilize one of the mechanisms enumerated in subsection (d). This Court agrees. In Georgia, absolute restrictions on alienation are against public policy. *See*, *e.g.*, *Wills v. Pierce*, 67 S.E.2d at 241. Although the ten-year restriction is not absolute in the sense that transfer will be permitted after ten years, it is unreasonable. For instance, under the strict construction of its terms, *see Rockowitz v. Raab & Berger*, 518 N.Y.S.2d 251 (N.Y. App. Div. 1987), the ten-year restriction prohibits transfer even to lineal descendants of Robert and Flora Lee. Therefore, if any current holder of Mossy Dell shares were to die within the next ten years, the terms of the transfer restriction would purport to prohibit transfer in any sense. This is unreasonable and unenforceable under Georgia law.

Furthermore, as noted above, transfer restrictions must fit within one of the four categories listed by Ga. Code § 14-2-627(d) to be enforceable under Georgia law. The ten-year restriction is not provided for by that section. For these reasons, the Bankruptcy Court's holding that the ten-year transfer restriction is invalid and unenforceable under Georgia law is **AFFIRMED.**

### ii.  Non-Family Transfer Restriction

The Bankruptcy Court held that the non-family transfer restriction did not fit within the ambit of (d)(4) because it prohibited transfer to the world, allowing transfer only to a narrow class of individuals, which the Court found to be the inverse of what the statute allows.  (*Id.* at 165.)   The Court additionally held that the restriction was manifestly unreasonable because it did not provide an avenue for a shareholder to realize the value of his or her shares.  (*Id.*)

Transfer restrictions on shares of corporate stock are treated like contracts.  *See Butner v. United States*, 440 U.S. 48, 55 (1979).  However, they are strictly construed in light of the law's general disfavor of restraints on alienation.  *See*, *e.g.*, *Rockowitz*, 518 N.Y.S.2d at 251.  "As a general rule, restrictions on the transferability of stock are enforceable in [Georgia]."  *Brown v. Momar, Inc.*, 411 S.E.2d 718, 722 (Ga. Ct. App. 1991).  In fact, a transfer restriction that permitted transfer only to lineal descendants of the shareholders, albeit in dicta, was declared enforceable under Georgia law.  *See id.* at 720-21, 722 n.1.  As recognized by Chief Justice Holmes, "Stock in a corporation is not merely property.  It also creates a personal relation analogous otherwise than technically to partnership... [T]here seems to be no greater objection to retaining the right of choosing one's associates in a corporation than in a firm."  *Barrett v. King*, 63 N.E. 934, 935 (Mass. 1902).

The Court finds that the non-family transfer restriction fits within the ambit of Ga. Code § 14-2-627(d)(4).  "[S]hareholders can restrict the potential market for their shares to a single entity."  *In re Taylor*, 228 B.R. 491, 498 (Bankr. M.D. Ga. 1998).  The language used by Ga. Code § 14-2-627(d)(4) to authorize the use of provisions that are

designed to restrict transfer of shares to individuals within a family is the standard language used by over one-half of the states.  To find that language that excludes the world and permits transfer only to a small class of individuals, i.e. a family, is invalid under the statutory language would impose an onerous burden on drafters of such restrictions.  For instance, it would be impossible to specifically list all classes of persons to whom transfer is prohibited where, as here, transfer to one class of individuals, i.e. family members, is all that is permitted.  Instead, "excluding the world" is less tedious and just as effective as the inverse.  Furthermore, the statute permits the prohibition of "transfer of the restricted shares to designated persons or classes of persons."  GA. CODE ANN. § 14-2-627(d)(4).   Appellant's transfer restriction does just that; transfer is prohibited to any person belonging to any class of persons who are not lineal descendants of Robert and Flora Lee.  (Doc. 1 at 73.)

This Court also disagrees with the Bankruptcy Court's finding that the non-family transfer provision is manifestly unreasonable because it does not "provide[] some alternative means for a shareholder to realize the value of his stock."  (*Id.* at 165.)  The Court reasoned that this result was necessary because otherwise, "if Debtor's family were unwilling or unable to purchase his shares, the restriction would serve as an absolute prohibition on transfer.  Absolute restrictions on transfer are 'unreasonable and contravene public policy.' "  (*Id.*)

The Official Comment to MBCA § 6.27 explains that a model rule for transfer restrictions was necessary because some courts "have rigidly followed the common law rule that [transfer restrictions] constituted restraints on alienation and should be strictly construed [but these] principles are often inappropriate [because] share transfer

restrictions ... are often essential parts of fundamental control structures for a closely held business."

In *FBI Farms, Inc. v. Moore*, 798 N.E.2d 440 (Ind. 2003), the Indiana Supreme Court interpreted an identical statute.[3]  In that case, the transfer restrictions required that (1) all stock sales be first approved by the Board of Directors, (2) the corporation be given the right of first refusal, (3) all other shareholders be given a right of refusal before the shares were offered to any third-party, and (4) any transfers of stock that had been refused by the corporation and all shareholders could only be to family members and only be for book value.  *Id.* at 442.

The *FBI Farms* Court held all four of the transfer restrictions valid.  The two provisions giving a right of first refusal to the corporation and shareholders were upheld because the statute expressly allows such provisions without regard to whether they are manifestly unreasonable.  *See* IND. CODE ANN. § 23-1-26-8(d)(1).  The court noted that, unlike the right of first refusal provisions, the restrictions requiring board approval and prohibiting transfer to non-family members were additionally required by the statute to not be manifestly unreasonable.  *See id.*; *see FBI Farms*, 798 N.E.2d at 447.

The factors that are relevant in determining whether a transfer restriction is reasonable include the size of the corporation, the degree of restraint upon alienation, the time the restriction is to continue in effect, the method to be used in determining the transfer price of shares, the likelihood of the restriction's contributing to the attainment of corporate objectives, the possibility that a hostile shareholder might injure the corporation, and the probability of the restriction's promoting the best interests of the

---

[3] The Indiana and Georgia statutes governing restrictive transfers are identical to Model Business Corporation Act § 6.27.  *Compare* IND. CODE ANN. § 23-1-26-8(d)(1) *with* GA. CODE ANN. § 14-2-627.

corporation.  *FBI Farms*, 798 N.E.2d at 447; *Goldblum v. Boyd*, 341 So. 2d 436, 446 (La. App. 1976).  The Bankruptcy Court did not expressly consider these factors.

It is not necessary that the transfer restriction explicitly provide alternative means for a shareholder to realize the value of his stock.  Mossy Dell could not arbitrarily decide not to purchase Debtor's shares because a corporation's board of directors is constrained by their fiduciary duties and may not take actions in bad faith. *See* GA. CODE ANN. § 14-2-830.  Although a shareholder of Mossy Dell may not be able to sell his or her shares if the corporation did not have the funds to buy them, that fact does not render the transfer restriction manifestly unreasonable.  An individual's inability to sell shares of corporation stock does not necessarily mean that person has been treated unfairly, it may simply mean that no one is willing to pay for the shares or that the shares are not worth what the holder is asking.  This is a fact of economics, not an unfairness of Mossy Dell's transfer restriction.

Furthermore, the fact that the securities at issue were obtained by an involuntary transfer does not necessarily render the transfer restriction invalid.  The Uniform Commercial Code holds that "a purchaser of a certificated ... security acquires all rights in the security that the transferor had or had power to transfer."  U.C.C. § 8-302.  *FBI Farms* held that the creditor in that case could properly buy the stock at the sheriff's sale but, since he took the shares with knowledge of the restrictions, it was "not unfair to [the] creditors that a purchaser at a foreclosure sale acquire the disputed shares subject to the same restrictions, and with whatever lessened value that produces."  *FBI Farms*, 798 N.E.2d at 449.

As further evidence that this result is not manifestly unreasonable or unfair, it should be noted that the Georgia Legislature has mandated this result.  Georgia law

provides for a right to transfer shares to third parties after a right of first refusal has been given to the corporation.  GA. CODE ANN. § 14-2-911(a).  However, this right applies only to statutory close corporations, which Mossy Dell is not.  *Id.*; *see also id.* § 14-2-910.  If the Georgia Legislature intended to provide this option to shareholders in a corporation such as Mossy Dell, it would have done so.

The Bankruptcy Court suggested that the non-family transfer restriction could be reasonable if it "require[d] the corporation to purchase the shares at a formula price if a shareholder wanted to sell his stock [GA. CODE ANN. § 14-2-627(d)(2)] [or] require[d] the seller to offer the stock to the corporation or existing shareholders prior to selling it to outsiders [GA. CODE ANN. § 14-2-627(d)(1)]."  (Doc. 1 at 165.)  A requirement that enables a shareholder to have the ability to realize the value of his or her shares at all times ignores the possibility that the corporation or its shareholders may not always have the resources to purchase the shares.  In such a scenario, the only way for a shareholder to realize the value of her shares would be to sell the shares to a third party.

The plain language of (d)(4), however, avoids this result; the corporation may prohibit the transfer of shares to designated persons regardless of the corporation's ability to purchase the shares as long as the prohibition is reasonable.  *See* GA. CODE ANN. § 14-2-627(d)(4).  Requiring an avenue to realize the value of one's shares threatens a corporation's ability to restrict transfer to certain persons.  Thus, by requiring that a right of first refusal or a buy-sell agreement accompany a prohibition against the "transfer of the restricted shares to designated persons or classes of persons," the apparent purpose of the latter mechanism, i.e. ensuring that transfer to certain persons is impossible, is frustrated.  *See id.* § 14-2-627(d)(4).  Under the Bankruptcy Court's holding, if the corporation is unable to purchase the shares, the

shares could be transferred to classes of persons the corporation sought to exclude from meddling with its affairs.  This result would render Ga. Code § 14-2-627(d)(4) "mere surplusage," which is not permitted under Georgia law.  *See Ga. Transmission Corp.*, 720 S.E.2d at 307.

This Court does not interpret (d)(4) as requiring an avenue for every shareholder to realize the value of his or her shares.  Instead, the Court finds that the intent of the "manifestly unreasonable" requirement of (d)(4) was to at least prevent absolute restrictions on transfer.  Although there may be provisions that do not amount to absolute restrictions on transfer but would nonetheless offend the "manifestly unreasonable" requirement of (d)(4), the restriction at issue in this suit is not such a restriction.  *See FBI Farms*, 798 N.E.2d at 447.  Accordingly, the Bankruptcy Court's holding that the non-family transfer restriction is unenforceable under Georgia law is **REVERSED.**[4]

For the foregoing reasons, the Bankruptcy Court's Memorandum Opinion is **AFFIRMED-IN-PART AND REVERSED-IN-PART,** and this matter is **REMANDED** for further proceedings consistent with this Opinion.

---

[4] It should be noted that this holding does not leave Appellee without recourse.  Courts have long held that there is no reason that a creditor who obtains a debtor's share in a corporation should be entitled to any greater property right than that previously held by the debtor.  *See, e.g.*, U.C.C. § 8-302.   In this case, Debtor held the shares of Mossy Dell with the same transfer restriction that binds Appellee.  Whatever depreciation in value caused by that restriction is to be suffered by Debtor and Appellee alike.   If Appellant has acted fraudulently to deprive Appellee of its rights, Georgia law provides Appellee with the opportunity to seek retribution.  *See* GA. CODE ANN. § 18-2-70, *et seq.*  In its brief, Appellee argues that Georgia's enactment of the Uniform Fraudulent Transfers Act "is helpful in understanding why a court of equity should not enforce the position being taken by Mossy Dell."  (Doc. 8 at 8.)  Appellee may be correct that "Debtor obviously had full knowledge of his financial situation when the transfer of assets occurred and for the corporation to now take the position that the stock it issued is not subject to levy and sale flies in the face of all logic and equity."  (*Id.* at 9.)  However, for the Bankruptcy Court to hold that there has been a violation of Georgia's Fraudulent Transfers Act, it must necessarily have concluded that there was no dispute of fact regarding Mossy Dell's alleged fraudulent purpose of enacting the transfer restrictions.  *See In re Taylor*, 228 B.R. 491 (Bankr. M.D. Ga. 1998).  However, the record does not at this point require that conclusion.

**SO ORDERED**, this    25th    day of September, 2013.


/s/ W. Louis Sands_____
**THE HONORABLE W. LOUIS SANDS,**
**UNITED STATES DISTRICT COURT**